Julian PEREZ, Individually and as Next Friend and Natural Guardian of Stella Perez, Appellants,

v.

George Earl MURFF, II and the City of Wichita Falls, Appellees.

No. 06–97–00093–CV.

Court of Appeals of Texas, Texarkana.

Argued April 2, 1998.

Decided May 20, 1998.

Opinion Overruling Rehearing June 30, 1998.

Robert O. Rafuse, The Office of Steven Williams, Wichita, Frank J. Douthitt, Henrietta, for appellant.

William Andrew Messer, Office of City Attorney, Wichita Falls, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

The appellants appeal the granting of a directed verdict in favor of the appellees and appeal the denial of their motion for new trial.

The appellants failed to comply with an agreed pretrial order when their trial attorney failed to designate witnesses by the agreed-upon deadline. The appellees filed a motion in limine preventing the calling of any undesignated witnesses at trial, and the judge granted that motion. At trial, the appellants called the undesignated witnesses, and the appellees objected. The objections were sustained, and the appellants made bills of exception. The appellees then moved for directed verdict, which was granted. The judgment was signed on March 25, 1997. The appellants' motion for new trial was denied, and they now bring this appeal.

## FACTS

Felicia Perez drove her parent's car to a party; her younger sister, Stella, was a passenger in that car. Returning from the party, Felicia stopped at a stop sign, then proceeded through the intersection. The car in which the two girls were riding was struck by a police car, which was traveling down the main thoroughfare.

## PROCEDURAL HISTORY OF THE CASE

The appellants filed suit on May 28, 1996, alleging that Officer George Murff (the driver of the police car) and the City of Wichita Falls had acted negligently and caused injury to Stella Perez. In October 1996, the parties signed an agreed pretrial order setting various deadlines for discovery, including a deadline of January 1, 1997, for designating witnesses to be called at trial. The appellants failed to designate their witnesses by January 1. A pretrial conference was set for March 6, 1997. The trial was scheduled for March 10.

The appellants had not designated their witnesses by the pretrial conference. At that hearing, the trial judge heard both the plaintiff-appellants' and defendant-appellees' motions in limine. The appellees' motion in limine asked the court to exclude all witnesses and exhibits not designated by the January 1 deadline. The trial judge took this under advisement. The following day, the trial judge granted the motion in limine excluding the undesignated witnesses.

On March 10, 1997, all parties appeared at trial and announced ready. The appellants asked the trial court to reconsider the motion in limine excluding their witnesses. After an evidentiary hearing on the matter, the trial court reaffirmed the exclusion of the witnesses. The parties then waived a jury and proceeded with a bench trial. The appellants

offered three witnesses. The appellees objected to each witness, and each objection was sustained. The trial judge allowed the appellants to complete a bill of exception for each witness where each witness was examined and testified generally as to their knowledge concerning the case. The appellants then rested. The appellees moved for a directed verdict, which the trial judge granted. The final judgment was signed on March 25, 1997.

On April 24, 1997, the appellants finally designated the witnesses whom they intended to call at trial. On the same day, the appellants filed a motion for new trial, asserting that the sanctions imposed by the trial court, the exclusion of the undesignated witnesses, amounted to death penalty sanctions which were overly harsh given the "crime" of missing a pretrial order deadline. The trial court held a hearing on the motion on May 23, 1997, then requested letter briefs from counsel. The judge signed an order denying the motion for new trial on June 9, 1997. The appellants then brought this appeal.

*ANALYSIS*

Six of the appellants' seven points of error complain that the exclusion of the undesignated witnesses was improper and an abuse of discretion, that the trial court failed to properly consider other appropriate sanctions, and that the trial court erred in failing to grant a motion for new trial.

A. Trial Court's Power to Sanction

■ In order "to assist in the disposition of the case," Rule 166 permits trial courts to hold pretrial conferences and to enter orders establishing the agreements of the parties as to any of the matters considered which controls the subsequent course of the case up to trial. TEX.R. CIV. P. 166. Although Rule 166 does not provide trial courts the power to sanction for failing to obey the court's pretrial orders, the Texas Supreme Court has determined that such power is implicit in Rule 166. *Koslow's v. Mackie,* 796 S.W.2d 700, 703 (Tex.1990).

Additionally, courts are authorized to impose sanctions against parties for abusing the discovery process. TEX.R. CIV. P. 215; *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986). Here, the appellants failed to comply with a pretrial order; they did not abuse the rules of discovery as contemplated by Rule 215. However, the requirements of the pretrial order did relate to discovery matters, e.g., the date for production of the trial witness list. Regardless of how it is viewed, the trial court had authority to impose sanctions on the appellants. This Court's review of those sanctions depends upon the characterization of the sanctions imposed.

B. Definition of a "Death Penalty" Sanction and Characterization of the Sanctions Imposed

■ The appellants contend that the sanctions imposed by the trial court, the exclusion of undesignated witnesses, amounts to a death penalty sanction. A death penalty sanction is any sanction that adjudicates a claim and precludes the presentation of the merits of the case. *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 845 (Tex.1992); *Braden v. Downey,* 811 S.W.2d 922, 929 (Tex. 1991); *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 918 (Tex.1991). Although death penalty sanctions are most often thought of in the context of striking pleadings or rendering a default judgment, any sanctions which are "case determinative" may constitute death penalty sanctions.[1] *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 732 (Tex.1993).

■ In the present case, the appellees did not file any type of formal motion for sanctions in response to the appellants' failure to designate witnesses. However, the request by the appellees to the trial court that the witnesses not designated be excluded and the trial court's subsequent exclusion of those witnesses essentially constituted sanctions for appellants' failure to designate.

1. Cases which have determined that sanctions equaled death penalty sanctions include: *Eason v. Eason,* 860 S.W.2d 187 (Tex.App.—Houston [14th Dist.] 1993, no writ) (preventing mother from testifying in child custody case); *Smith v.*

*Nguyen,* 855 S.W.2d 263 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (striking of testimony of expert witness which was essential to plaintiff's presentation of merits of case).

The trial court's ruling operated to exclude all of the appellants' fact witnesses and any documents or exhibits which may have been offered at trial. The appellees argue that this order did not preclude the appellants from presenting a prima facie case because experts who had been previously designated were still allowed to testify and the trial court did not strike the appellants' pleadings. We disagree. The exclusion of undesignated witnesses precluded the appellants from presenting the merits of their case. The sanctions imposed are properly characterized as a death penalty sanction.

## C. Propriety of the Sanction Imposed

■ We must review the trial court's actions under an abuse of discretion standard. Imposing an available sanction is left to the sound discretion of the trial court. An appellate court will set aside the decision only on a showing of a clear abuse of discretion. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles, or equivalently, whether under all the circumstances of the particular case the trial court's action was arbitrary or unreasonable. *Koslow's*, 796 S.W.2d at 704. However, when reviewing death penalty sanctions, we are also required to review the trial court's actions in light of the standards set out in *TransAmerican*. *Kutch v. Del Mar College*, 831 S.W.2d 506, 511 (Tex.App.—Corpus Christi 1992, no writ).

The Texas Supreme Court stated:

[W]hether an imposition of sanctions is just is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender. The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. This we recognize will not be an easy matter in many instances. On the one hand, a lawyer cannot shield his client from sanctions; a party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. On the other hand, a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation. The point is, the sanctions the trial court imposes must relate directly to the abuse found.

Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.

*TransAmerican Natural Gas Corp.*, 811 S.W.2d at 917.

■ We must first determine if the sanctions imposed by the trial court were directly related to the abusive conduct. Such sanctions must be imposed on the offender. The trial court must attempt to determine who the offender is and sanction appropriately. In the present case, the failure to designate witnesses was clearly attributable to the appellants' trial attorney. There is no indication in the record that the actual parties had any knowledge of or role in the failure to timely designate witnesses. Although striking the witnesses seems to relate directly to the failure to designate the witnesses, such sanctions most severely affect the parties, not the attorney.

In later case law, the Texas Supreme Court has also found that sanctions failed under the first prong of the *TransAmerican* test when the party seeking the sanctions could show no prejudice due to the conduct of the offending party. *Chrysler Corp.*, 841 S.W.2d at 849. We have no doubt that failure to designate witnesses can work as a prejudice on a party when there are a great number of possible witnesses, but in this case, the appellees had themselves designated Felicia Perez. They had also deposed Stella Perez and Julian Perez, as well as Felicia Perez. When the appellants did file their witness designations, they listed only

Julian, Stella, and Felicia Perez. Although the appellees could not have known before trial that only these three would be designated, there was no prejudice worked when only these three were called to testify.

The second inquiry under *Trans-American* is whether the sanctions were excessive. The purposes of discovery sanctions are to: (1) secure the parties' compliance with the rules of discovery; (2) deter other litigants from violating the discovery rules; and (3) punish parties that violate the rules of discovery. *Bodnow Corp.*, 721 S.W.2d at 840. We must determine if the sanctions applied were no more severe than necessary to meet the purpose of the sanctions.

As part of this inquiry, we must look to see if the trial court considered any lesser sanctions as a means to address the problem. The record fails to show that the trial judge considered any lesser sanctions until the motion for new trial. However, the trial court's failure to consider less stringent sanctions does not invalidate the sanctions imposed if the sanctions imposed are "clearly justified and it is fully apparent that no lesser sanctions would promote compliance. . . ." *GTE Communications Sys. Corp.*, 856 S.W.2d at 729. This Court must review the record and determine if the trial court could have found that appellants' counsel exhibited such flagrant bad faith or callous disregard for the responsibilities imposed on him by the trial court that such severe sanctions were justified. *Chrysler Corp.*, 841 S.W.2d at 849 (citing *TransAmerican Natural Gas Corp.*, 811 S.W.2d at 918).

The record does reflect some evidence of dilatoriness on the part of appellants' counsel. Appellants did not designate the witnesses they expected to call at trial before the trial date of March 10. The trial date was more than two months after the trial court's deadline of January 1, 1997. The appellants were aware that the deadline had been missed as early as January 24, 1997, when the appellants' trial counsel sought an extension of the witness designation deadline by a TEX.R. CIV. P. 11 agreement. Opposing counsel did not agree to the extension. Although the appellants' counsel completed a number of other tasks in relation to the suit during the interim, counsel did nothing in the way of designating witnesses until April 24, 1997, the same day a motion for new trial was filed.

The excuse presented to the trial court for failing to timely designate witnesses initially was that the attorney's secretary misfiled the reminder in the office "tickler" system. This excuse still fails to demonstrate why, after becoming aware of the missed deadline, the appellants did not immediately attempt to designate witnesses. Regardless, the appellants' counsel did not approach the trial judge about extending the deadline to designate witnesses or otherwise present an excuse for failing to do so.

However, even given these facts, we fail to find the type of flagrant bad faith or callous disregard on the part of counsel as to wholly preclude a trial on the merits. We find nothing in the record to indicate that some lesser sanction would not have compelled the appellants' counsel to comply with the pretrial order.

The trial court abused its discretion in striking all of the appellants' undesignated witnesses and thereby effectively trying the case on sanctions and not on the merits.

We also find that, due to the impropriety of the sanctions imposed, the motion for new trial should have been granted.

Appellants also argue that a new trial should have been granted because they had furnished all the information required by the pretrial order, presumably through answers to interrogatories where they listed the names of those witnesses with knowledge of relevant facts. This argument lacks merit because all parties agree that the appellants did not comply with the pretrial order, even if the information required in the pretrial order was available elsewhere. We do not grant a new trial on this basis, but on the fact that the sanctions imposed were excessive.

In the last point of error, appellants contend that the trial court erred in granting the motion in limine which prevented the appellants from presenting the merits of their case. A point of error complaining of a

ruling on a motion in limine presents nothing for review. *Texas v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 866 (Tex.1988) (citing *Hartford Accident and Indem. Co. v. McCardell,* 369 S.W.2d 331, 335 (Tex.1963)). This point is overruled.

The appellees argue that, even if we find that the sanctions imposed were too stringent and deem the sanctions as error by the trial court, we should not reverse the judgment of the trial court because the sanctions did not lead to an improper judgment. According to Rule 44.1 of the Texas Rules of Appellate Procedure, errors in the trial court should only be reversed if the error probably caused the rendition of an improper judgment or probably prevented the appellant from presenting the case to the court of appeals. TEX.R.APP. P. 44.1(a)(1), (2). In reviewing the granting of a directed verdict, this Court views the evidence in the light most favorable to the party against whom the verdict was rendered and disregards all contrary evidence and inferences. *Qantel Bus. Sys., Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 303 (Tex.1988). The trial judge may rule on both the factual and legal issues at the close of the plaintiff's case. *Id.* at 304. At the close of the appellants' evidence, appellees moved for a directed verdict, but did not state any basis for the motion. Presumably, the trial court granted the directed verdict because the appellees were unable to put on their case without the excluded witnesses and the trial court found no evidence to support the appellants' claims. The order granting the directed verdict also provided no reason for the judgment.

The appellees contend that the appellants failed to prove a prima facie case in their bills of exception, so the evidence developed would have still resulted in a directed verdict. To preserve error, a bill of exception must show the nature of the evidence specifically enough so that the reviewing court can determine its admissibility. *Bohatch v. Butler & Binion,* 905 S.W.2d 597, 607 (Tex.App.—Houston [14th Dist.] 1995), *aff'd,* No. 95–0934, 1998 WL 19482, —— S.W.2d —— (Tex. Jan.22, 1998) (citing *Powell v. Powell,* 554 S.W.2d 850, 854–55 (Tex. Civ.App.—Tyler 1977, writ ref'd n.r.e.)). The nature of the testimony which would have been submitted to the trial court is obvious from the bills of exception. All three witnesses testified that they had knowledge of relevant facts and could testify to such facts if called upon. It is unnecessary to fully develop a case by bill of exception. It is only necessary to apprise the trial court and the appellate court of the nature of the testimony which would have been offered.

The appellees argue that the appellants failed to show that the City of Wichita Falls received notice of the claim under the Tort Claims Act which, if true, would result in a directed verdict. The appellees did allege the lack of notice in their answer to the suit. However, this defense was not developed at trial, and the directed verdict was granted on the basis that the appellants did not present a prima facie case due to the exclusion of the undesignated witnesses. Since this defense was not fully developed, we decline to uphold the trial court solely on this basis.

Finally, the appellees argue that the appellants did not own their claims and, since they have no justiciable interest in the claims, are not entitled to bring them. Given this impermissible assignment of claims, the appellees contend that a directed verdict could properly be granted on this basis. The appellees also asserted this defense in their answer to the suit. However, this was not developed at trial and apparently serves no basis for the directed verdict which was granted. Therefore, we will not uphold the judgment of the trial court on this basis.

The judgment of the trial court is reversed, and the cause remanded for a new trial.

GRANT, Justice, concurring.

It is a desirable goal to avoid punitive sanctions being imposed against a party when the basis is solely the conduct of the party's attorney. I also agree that it is laudable to try to avoid sanctions that prevent the case from being decided upon its merits. Nevertheless, it is necessary for the trial judge to enforce the procedural requirements to achieve a fair trial.

Our courts have moved to a system geared to avoid trial by ambush and to place each party in a position of entering the trial on an equal basis. When the trial court has entered an agreed pretrial order requiring the parties to furnish a list of the witnesses who will be called to testify, fairness would dictate that each side should be provided such a list. This Court recently reversed and remanded a case to the trial court because the trial court had not excluded evidence from witnesses that was newly discovered and contrary to their depositions. *Lucas v. Titus County Mem'l Hosp.*, 964 S.W.2d 144 (Tex. App.—Texarkana, 1998, n.w.h.). We remanded the case because we determined that supplementation of discovery was mandatory in such a situation, and a failure of supplementation placed the opposing counsel in a position of being unprepared to address the new matters presented by this evidence.

The question that arises in the present case is what would have been the appropriate sanctions for the trial judge to impose that would not have been detrimental to one party or the other. In this type of case, to avoid the death-penalty-type sanctions, the court could have imposed sanctions against the attorney only without affecting the trial of the case. But in addition to this, if requested, the trial court might be required to continue the case to give the other side the opportunity to prepare for witnesses who had not been designated. Even when the potential witnesses have been deposed, it cannot be assumed that the opposing side has prepared for the testimony of those witnesses who have not been designated.

The sanctions in this case have a direct relationship to the offensive conduct, but without less stringent sanctions and warnings, would not satisfy the second prong set out in the Supreme Court case of *Trans-American Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991).

This case imposes a difficult burden on trial judges who have trial schedules that are thwarted by a failure of counsel to comply with an agreed pretrial order, but in the interest of justice this may be the only appropriate approach.

## OPINION ON MOTION FOR REHEARING

We write separately on rehearing to address two matters raised in the appellees' motion for rehearing. First, the appellees assert that our opinion creates a conflict in the courts of appeals and, specifically, that it is in conflict with the Fort Worth Court of Appeals, the court from which this case was transferred. Second, we write to resolve any confusion about whether our opinion also affects documents which were undesignated under the terms of the trial court's pretrial order.

The appellees first complain that, since this is a case transferred from the Fort Worth court, this Court should have followed the holdings of the Fort Worth court. By failing to do so, they argue, this Court reached an opposite conclusion from that which would have been reached by the Fort Worth court. We believe that we are not to isolate a single intermediate appellate court's precedent to use as a guide for our conclusions. Rather, we are required to ascertain what the law is of the state of Texas and apply that law to the facts of a given case, whether that case is a transferred case or a case from our own district.

■■■ Our sister court in San Antonio recently addressed this very issue. *American Nat'l Ins. Co. v. International Bus. Machs. Corp.*, 933 S.W.2d 685 (Tex.App.—San Antonio 1996, writ denied). In *American National*, the dissent brought up the same issue which the appellees raise here. We agree with the majority's response, which states:

> The theory of our law is that the State of Texas has but one law on any given subject, and that the law is as proclaimed by the courts of appeals and finally, in civil cases, by the Texas Supreme Court.
>
> This theory acknowledges that there may be differences of opinion among the courts of appeals as to what that law is. The remedy for such conflicts or errors is an appeal to the Texas Supreme Court. TEX. GOV'T CODE ANN. § 22.001(a)(2)(6) (Vernon 1988).
>
> Conflicts of law rules make sense when applied to separate sovereigns, whether

nations or sovereign states, because in those instances there really can be conflicts in the law from one sovereign state or nation to the other. Where, however, there is only one sovereign, a court of appeals' duty is to decide and apply the law of that sovereign, not to ascertain the law as stated in a given district, whether its own or the district from which a case has been transferred. The State of Texas consists of only one sovereign state, not fourteen.

We acknowledge that there can be problems caused by the fact that Texas is such a large and diverse state, that we have fourteen courts of appeals districts, and that cases are transferred from one of those districts to other districts where the justices' views of what the law of Texas is may differ from the justices of the court from which the case arose. We believe, however, that the answer to those difficulties lies in an appeal to the Texas Supreme Court, in civil cases, or to the Texas Court of Criminal Appeals, in criminal cases, rather than in an effort on our part to be parochial in our application of the law to the facts presented us.

*American Nat'l Ins. Co.*, 933 S.W.2d at 688. We endorse the San Antonio court's analysis. Therefore, if a conflict exists between our decision and the *stare decisis* of the Fort Worth court, it is for the Texas Supreme Court to resolve.

 As for the second issue on rehearing, whether undesignated documents were properly excluded from the trial due to the appellants' failure to comply with the pretrial order, we express no opinion. This issue was not preserved below, and we may not review it on appeal. The appellants presented only fact witnesses at trial and did not attempt to present any undesignated documents. The appellants presented fact witnesses, drew objections from the appellees as to each one, and the trial judge sustained each objection. The appellants then presented bills of exception for each fact witness objected to by the appellees. This properly preserved the issue as to whether the fact witnesses were improperly excluded for our review. TEX. R.APP. P. 33.1. However, since no undesig-

nated documents were offered, there was no adverse ruling of the trial court with regard to those documents, and no error is preserved for our review.

Appellees' motion for rehearing is overruled.