**Stacy THOMPSON and Sean Denzil Thompson, Appellants,**

v.

**James J. WOODRUFF, Duane L. Larson, and Scott Kacy, Appellees.**

No. 09–05–511 CV.

Court of Appeals of Texas, Beaumont.

Submitted on May 3, 2007.

Decided Aug. 2, 2007.

Laws 3269, 3333–34; Act of May 27, 1983, 68th Leg., R.S., ch. 567, § 2, sec. 113.101,

1983 Tex. Gen. Laws 3269, 3360.

Denise W. Novotny, Novotny Legal Group, Houston, for appellants.

James J. Woodruff, II, Atlantic Beach, FL, Dion Ramos, Houston, James B. Edwards, Donald S. Stephens, Edwards and Associates, Stafford, for appellees.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

Stacy Thompson and Sean Denzil Thompson appeal the dismissal of their medical malpractice suit against James J. Woodruff, Duane L. Larson, and Scott Kacy. In eight issues, the Thompsons claim the trial court erred by imposing case-determinative sanctions for discovery abuses solely attributable to their impaired lawyer, without first considering lesser sanctions. We reverse and remand.

Suit commenced on May 10, 2002. Although nineteen defendants are named in the Thompsons' petition, only Doctors Woodruff, Larson, and Kacy were served and appeared. Due to a defect in the Thompsons' notice letter, the trial court abated the suit for sixty days. On June 12, 2003, the day before the scheduled hearing on Woodruff's motion for summary judgment, the Thompsons filed a motion for continuance based upon a life-threatening illness suffered by their attorney of record. The motion alleged that counsel's extended hospitalization resulted in her absence from her practice and the loss of most of her support staff. The motion also alleged that counsel had a conflicting setting in a Harris County probate court and that the Thompsons needed to conduct additional discovery. The motion for summary judgment was not heard on the scheduled date and the Thompsons filed their response to the motion for summary judgment three months later. The Thompsons submitted the affidavit of their expert, Gerald L. Bullock, in a supplemen-

tal response filed the day after they filed their response to the motion for summary judgment. Woodruff objected to the untimely submission. The trial court denied the motion for summary judgment without ruling on Woodruff's objection.

Larson filed a motion for summary judgment on November 10, 2003. The Thompsons filed a motion for leave to file a late response to Larson's motion for summary judgment. The Thompsons' motion alleged their attorney's health problems forced counsel into bankruptcy, that the bankruptcy court had not acted on her motions to release collateral, and that she could not obtain the expert's report until the funds required to obtain the report were released by the bankruptcy court. The Thompsons submitted an unverified report by Bullock. Larson objected to the form of the Thompsons' summary judgment evidence, but the trial court denied the motion for summary judgment without ruling on Larson's objection. On April 21, 2004, an agreed scheduling order established a March 1, 2005, discovery request deadline and a trial setting for the following April.

On November 17, 2004, Larson filed a motion to compel answers to interrogatories and requests for production. The parties agreed to supplement discovery and reset the hearing on motion to compel, but the Thompsons failed to comply with the agreement. Finding a pattern of falsely promising to supplement the responses to Larson's written discovery, the trial court overruled the Thompsons' objections to Larson's interrogatories and requests for production, ordered the Thompsons to respond to the interrogatories and to produce the requested records within fourteen days, and ordered the Thompsons and their attorney to pay $2,500 as attorney's fees. Larson filed a motion for summary

judgment based on his limitations defense; the trial court denied the motion.

A few days before the April 2005 trial setting, Larson had heart surgery and the trial had to be reset. In June, the trial court granted Larson's request for a preferential setting and placed the case third on the September 2005 trial docket. On July 21, 2005, Larson filed a motion to compel answers to requests for admissions and for sanctions and noticed a hearing on the motion for August 31, 2005. According to the motion, Larson served requests for admission on the Thompsons on June 6, 2005, and the Thompsons filed their response on July 11, 2005, a date Larson claimed to be five days late. The Thompsons argued the operation of rules governing notice by mail and weekend deadlines made their response timely.

On August 15, 2005, Larson filed a motion to strike Bullock as an expert and moved for a dismissal with prejudice. Larson's motion to strike alleged Bullock's deposition had been noticed for February 1, 2005, that neither Bullock nor plaintiffs' counsel appeared for the deposition, and that Kacy obtained a certificate of nonappearance. On February 16, 2005, the deposition was again noticed for March 2; on March 1 counsel for the Thompsons called to say that she had been subpoenaed to testify at trial on March 2. The subpoena in question had been served on the Thompsons' counsel on March 1. Counsel for Larson and Kacy were present for the deposition and obtained another certificate of nonappearance. Another notice issued on March 15 for a March 24 deposition, but Larson's attorney cancelled the deposition at the request of the Thompsons' attorney. On July 1, 2005, Larson noticed the deposition for July 13, 2005. For reasons not established in the record, the deposition did not occur. In a notice dated August 12, 2005, Larson added his motion to strike to the matters being heard on August 31, 2005.

On August 18, 2005, Kacy filed a motion for summary judgment based upon deemed admissions and a motion to strike Bullock as an expert, and to dismiss the Thompsons' claims with prejudice. According to Kacy's motion for summary judgment, the Thompsons failed to respond to requests for admissions served June 20, 2005. Kacy's motion to strike relied upon the same events as those described in Larson's motion to strike. The Thompsons' response claimed that plaintiffs' counsel had been working with a reduced staff and failed to notice that both Larson and Kacy had requested admissions. The Thompsons responded to Kacy's request for admissions on September 14, 2005.

On August 21, 2005, Woodruff scheduled Bullock's deposition for August 22, 2005. On September 1, 2005, Woodruff filed a motion to strike Bullock as the Thompsons' expert and to dismiss the case with prejudice.

The trial court conducted a hearing on August 31, 2005. Counsel for the Thompsons failed to appear. The trial court noted that the Thompsons' counsel had been set that morning in a court in another county, that the case with the conflicting setting had been continued just that morning, and that the Thompsons' counsel could not get to Jefferson County for the scheduled hearing. Taking the case on submission without a hearing, the trial court granted Larson's motion and in a single order prohibited Bullock from providing testimony and dismissed with prejudice all claims against Larson. The Thompsons filed a motion for reconsideration on September 8, 2005. The motion alleged that counsel traveled to Austin on August 19 and was in trial in Austin from August 22 through August 25. The motion also al-

leged that counsel was required to appear in court in Galveston beginning August 29, that she notified counsel of the conflict by telephonic document transmission, and that she called the court on August 31 to discover the hearing had proceeded without her. The motion alleged that counsel had been unable to pay past fees owed to Bullock but that she was in the process of obtaining substitute counsel to fund Bullock's employment. The Thompsons requested a 90 day continuance.

The trial court heard Kacy's and Woodruff's motions on September 14, 2005, along with the Thompsons' motion to reconsider Larson's motions. Stacy Thompson appeared at the hearing, but her attorney arrived late. The Thompsons also asked to substitute counsel. Counsel for the Thompsons informed the trial court that she had been trying to secure another attorney to pay Bullock but that the defendants set the deposition without calling her ahead of time about the date. On the day of the hearing, the trial court granted the Thompsons' motion to substitute counsel of record but continued previous counsel as "designated as lead counsel for trial." The following day, the trial court granted Kacy's and Woodruff's motions, prohibited Bullock from providing testimony in the case, and dismissed the Thompsons' claims with prejudice. The trial court also granted Kacy's motion for summary judgment. Later, the trial court signed an order dismissing the case for want of prosecution.

■■■ Issues four through seven argue the trial court erred in striking Bullock as an expert witness and dismissing the Thompsons' claims. The dismissal of the Thompsons' claims against the three doctors occurred as the direct result of discovery abuse. *See* Tex.R. Civ. P. 215.3. Discovery sanctions require the application of the following two-part test:

First, a direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender. The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. This we recognize will not be an easy matter in many instances. On the one hand, a lawyer cannot shield his client from sanctions; a party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. On the other hand, a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation. The point is, the sanctions the trial court imposes must relate directly to the abuse found.

Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.

*TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991).

■■ The Thompsons' situation bears some similarity to *Spohn Hospital v. Mayer,* 104 S.W.3d 878, 882 (Tex.2003). In *Spohn Hospital,* the defendant failed to timely produce material witness statements. *Id.* at 880. Without discussing whether counsel or client was responsible for the discovery abuse or exploring lesser sanctions, the trial court instructed the

jury that specified portions of certain witness statements were established facts. *Id.* at 882–83. Noting that discovery sanctions that inhibit presentation of the merits of a case should be reserved for instances of "a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules[,]" the Supreme Court held the trial court abused its discretion. *Id.* at 883. *Spohn Hospital* and *TransAmerican* express the guiding principle that "death penalty" sanctions cannot be imposed in the absence of a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery. *Id., TransAmerican,* 811 S.W.2d at 918. "Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *TransAmerican,* 811 S.W.2d at 918. Larson, Kacy, and Woodruff contend that counsel's callous disregard for the discovery process in this case justifies the imposition of merits-preclusive sanctions against the Thompsons. *See Spohn Hospital,* 104 S.W.3d at 883; *TransAmerican,* 811 S.W.2d at 918.

There appears to be no dispute that the appellants' failure to timely respond to requests for admissions and to produce their expert for deposition is entirely attributable to their attorney. Although the failure to answer Kacy's requests for admissions along with Larson's appears to be nothing more than an inadvertent oversight, the trial court could have found some of counsel's conduct surrounding the taking of Bullock's deposition to be an intentional avoidance of the defendants' right to conduct discovery. For instance, during the hearing, the Thompsons' counsel admitted that she did not produce Bullock for deposition because she personally lacked the funds to hire him. Rather than admit that she lacked the financial resources to pursue the suit on behalf of her clients, the attorney contacted opposing counsel shortly before the deposition was to occur and presented a scheduling conflict as an excuse for non-appearance. These unfortunate circumstances reflect on the competence of counsel but do not indicate that the Thompsons' claims lack merit. *See TransAmerican,* 811 S.W.2d at 918 n. 7; *see also Cire v. Cummings,* 134 S.W.3d 835, 841 (Tex.2004) (party's deliberate destruction of evidence justified presumption that evidence would have shown the opposing parties were not liable).

■ Even when counsel exhibits callous disregard for the responsibilities of discovery, "lesser sanctions must first be tested to determine whether they are adequate to secure compliance, deterrence, and punishment of the offender." *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992). Only the most egregious circumstances, such as the destruction of evidence in *Cire v. Cummings,* justifies the conclusion that no lesser sanctions would fully promote compliance with the discovery rules. *Cire,* 134 S.W.3d at 840–41; *see also GTE Commc'ns Sys. Corp. v. Tanner,* 856 S.W.2d 725, 729 (Tex.1993). This case presents a pattern of noncompliance similar to that found in *Perez v. Murff,* 972 S.W.2d 78, 83 (Tex.App.-Texarkana 1998, pet. denied). In *Perez,* counsel failed to designate witnesses or ask the trial court for an extension after counsel realized that a calendaring error caused the deadline to pass without the designation being provided. *Id.* The appellate court held that the trial court abused its discretion in striking the undesignated witnesses. *Id.* By contrast, repeated non-appearance at a deposition justified death penalty sanctions in *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242–43 (Tex.1985). In that case, however, the party made the crew unavailable for deposition by sending

them out to sea. *Id.* at 242. The record of this appeal provides no indication that the Thompsons were personally responsible for the discovery abuse or even aware that their attorney had failed to produce the expert witness for deposition.

The trial court punished the appellants for the conduct of their attorney without first imposing lesser sanctions. As was the case in *TransAmerican,* the trial court could have ordered Bullock's deposition for a specific date and punished any failure to comply with that order by contempt or another sanction. *See TransAmerican,* 811 S.W.2d at 918. Stacy Thompson was personally present at the September 14 hearing and could have been advised of the consequences of any further non-compliance. The trial court allowed substitution of counsel on September 14 and the record does not suggest that new counsel would have continued the pattern of discovery abuse. We hold the trial court abused its discretion in striking the Thompsons' expert witness and in dismissing their claims with prejudice. We sustain issues four through seven.

■ In their first two issues, the Thompsons contend the trial court erred in refusing to allow them to withdraw their deemed admissions and in granting summary judgment for Kacy based upon the deemed admissions. Kacy contends the Thompsons' lack of good cause is established by their attorney's failure to timely respond to Woodruff's and Larson's motions for summary judgment and failed to timely supplement their answers to Larson's interrogatories. He argues that counsel's continued participation in the case notwithstanding her awareness of her long-standing impairments qualifies as conscious indifference under the standard for withdrawing deemed admissions. *See Stelly v. Papania,* 927 S.W.2d 620, 622 (Tex.1996) ("A party can establish good

cause by showing that its failure to answer was accidental or the result of a mistake, rather than intentional or the result of conscious indifference."). We disagree, for two reasons: first, the record does not indicate that the Thompsons were aware of their counsel's impairment; second, counsel could be aware that her impairment interfered with her responsibilities to provide discovery without being aware that Kacy requested admissions. The record does not support a finding that either the Thompsons or their attorney consciously failed to respond to Kacy's request for admissions.

■ Kacy also argues that the Thompsons failed to demonstrate that he would not be harmed if the trial court permitted them to withdraw the deemed admissions. "Undue prejudice depends on whether withdrawing an admission or filing a late response will delay trial or significantly hamper the opposing party's ability to prepare for it." *Wheeler v. Green,* 157 S.W.3d 439, 443 (Tex.2005). Kacy requested admissions that include the following: that he was not negligent in his treatment of Stacy Thompson; that he used that degree of care that a physician of ordinary prudence practicing plastic surgery would use under the same or similar circumstances; that he used ordinary care in his treatment of Stacy Thompson; that his treatment was not a proximate cause of injury to Stacy Thompson; and that his treatment of Stacy Thompson was not a proximate cause of injury to Sean Thompson. That none of the requested matters were purposefully admitted by the Thompsons would be evident from the specific allegations contained in their pleadings. Kacy could not have been misled into thinking that the Thompsons admitted he was not negligent in his treatment of Stacy Thompson, and his defense could not have been prejudiced by the late response.

Withdrawing such broadly-stated admissions would require neither repeating previously conducted discovery nor delaying the trial. "[W]hen a party uses deemed admissions to try to preclude presentation of the merits of a case, the same due-process concerns arise" as in death penalty sanction cases. *See Wheeler v. Green,* 157 S.W.3d at 443. *Cf. Morgan v. Timmers Chevrolet, Inc.,* 1 S.W.3d 803, 807 n. 5 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (party relied on specific admissions in preparing case for trial). We hold the trial court abused its discretion by refusing to allow the Thompsons to withdraw the deemed admissions, and in granting summary judgment based upon the deemed admissions. We sustain issues one and two. We hold the trial court erred in refusing to allow the appellants to withdraw the deemed admissions and in granting summary judgment based solely upon the deemed admissions, and in striking the appellants' expert witness and dismissing all of the appellants' claims with prejudice. We decline to address the Thompsons' remaining issues, as sustaining them would not provide greater relief to the appellants. We reverse the trial court's judgment. We remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED.