Opinion issued May 23, 2019



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00424-CV

_____

**DOUG FRANKE, Appellant**

**V.**

**LEONARDO PALAU, M.D. AND HOUSTON CENTER FOR INFECTIOUS DISEASES, P.A., Appellees**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-58443**

---

## MEMORANDUM OPINION

In this medical malpractice action, Doug Franke appeals from the trial court's orders striking his medical expert, denying his motion to designate a substitute expert, and granting no-evidence summary judgment. Finding no error, we affirm.

## BACKGROUND

Franke sued Leonardo Palau, M.D. and the Houston Center for Infectious Diseases, P.A., for medical malpractice in October 2014. Both defendants filed general denials and asserted several affirmative defenses.

Franke designated Jerrold S. Dreyer, M.D., as an expert on the standard of medical care and the breach of that standard in July 2015. Dreyer was the sole expert designated by Franke on these issues.

Palau and the Center repeatedly tried to depose Dreyer. They first requested his deposition in July 2016 and made second and third requests before the end of that year. In 2017, they noticed Dreyer's deposition for January 9, June 14, July 6, and July 25. After failing to secure his deposition on any of these dates, they moved to exclude his testimony as a discovery sanction in August 2017. The trial court denied their motion and instead ordered that:

> The deposition of Plaintiff's retained/designated expert, Jerrold Dreyer, M.D., shall be accomplished on or before Friday, September 8, 2017. Failure to comply with this Order may result in the exclusion of Jerrold Dreyer, M.D. from offering testimony at the time of trial.

The parties approved the order as to form.

The parties agree that Hurricane Harvey derailed the September deposition even though it had been scheduled to take place in California, where Dreyer resides. When Franke's counsel had not produced Dreyer by early October 2017, Palau and

2

the Center moved to compel his deposition. But in lieu of a hearing, the parties agreed to the entry of an order providing that:

> [The deposition of] Plaintiff's retained/designated expert, Jerrold Dreyer, M.D., shall be accomplished on November 30, 2017. Failure to comply with this Order will result in the exclusion of Jerrold Dreyer, M.D. from offering testimony at the time of trial.

The parties approved this order as to form and substance, and Palau and the Center noticed Dreyer's deposition for November 30.

Once again, however, Dreyer's deposition did not go forward. Just after 9:00 p.m. on November 28, Franke's counsel requested that the November 30 deposition be rescheduled as "a personal favor." Thus, in December 2017, the parties agreed to the entry of an amended order providing that:

> [The deposition of] Plaintiff's retained/designated expert, Jerrod Dreyer, M.D., shall be accomplished on Monday, January 15, 2018, at 10:00 a.m., in Houston, Texas. Failure to comply with this Order will result in the exclusion of Jerrold Dreyer, M.D. from offering testimony at the time of trial.

The parties approved this order as to form and substance, and Palau and the Center noticed Dreyer's deposition for January 15.

The January 15, 2018 deposition did not go forward. After 4:00 p.m. on Sunday, January 14, Franke's counsel e-mailed opposing counsel that Dreyer would "not be able to travel to Houston for tomorrow's deposition." Palau and the Center then moved to exclude Dreyer's testimony as a discovery sanction and in accord

3

with the terms of the December 2017 agreed order. The trial court granted the motion to exclude Dreyer in February 2018.

Palau and the Center then moved for no-evidence summary judgment, contending that, without Dreyer's expert testimony, Franke had no proof of duty, breach, or causation. The trial court agreed, rendering a take-nothing judgment against Franke in March 2018.

The day before the trial court rendered judgment, Franke moved for leave "to designate a substitute expert witness to address the exact same issues and offer the same opinions as those of Dr. Dreyer." Franke argued that unforeseen events, like Hurricane Harvey, were good cause for allowing the substitution and that the case could be removed from the two-week April 16, 2018 trial docket to allow the parties to depose the new expert and prepare for trial. The trial court denied Franke's motion for leave to designate a substitute expert.

Franke appeals.

## DISCUSSION

Franke contends that the trial court abused its discretion in excluding Dreyer and disallowing him from substituting another expert. Franke further contends that the trial court's no-evidence summary judgment, which was premised solely on his lack of medical expert testimony, should be reversed as well.

## I. Discovery Sanctions

### A. Standard of review and applicable law

A trial court has broad discretion to impose sanctions on recalcitrant litigants. *Altesse Healthcare Sols. v. Wilson*, 540 S.W.3d 570, 572 (Tex. 2018) (per curiam). We thus review a trial court's sanctions ruling for an abuse of discretion. *Id.* at 573.

But the trial court's discretion to impose sanctions is not limitless. *Id.* at 572. There must be a direct relationship between the sanctions imposed by the trial court and the litigant's offense and the trial court's sanctions must be proportionate to the offense. *See id.* at 572, 574. A direct relationship between sanctions and the litigant's offense exists when the sanctions are directed against the offensive conduct and toward remedying the prejudice suffered by blameless parties. *Petrol. Sols. v. Head*, 454 S.W.3d 482, 489 (Tex. 2014). To be proportionate, the sanctions must be no more severe than necessary to satisfy their legitimate purposes. *Id.* Proportionality generally requires that the trial court consider, and in all but exceptional cases impose, lesser sanctions before levying greater ones. *Id.*

Death-penalty sanctions, those which deprive a litigant of an opportunity to be heard on the merits, are reserved for egregious conduct that justifies a presumption that the litigant's claims lack merit. *Altesse*, 540 S.W.3d at 572. Conduct so egregious as to warrant death-penalty sanctions is limited to situations involving a party's flagrant bad faith or counsel's callous disregard for her

5

responsibilities under the discovery rules. *Brookshire Bros. v. Aldridge*, 438 S.W.3d 9, 24 (Tex. 2014); *Spohn Hosp. v. Mayer*, 104 S.W.3d 818, 883 (Tex. 2003) (per curiam). When a litigant persists in refusing to produce material evidence, in spite of the imposition of lesser sanctions, a trial court may presume that the litigant's claims lack merit. *Cire v. Cummings*, 134 S.W.3d 835, 839, 841 (Tex. 2004) (relying on *TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991)).

### B. Analysis

#### 1. Direct relationship between sanctions and offense

Franke contends that there is not a direct relationship between the sanction imposed by the trial court and the offense because Dreyer's failure to appear for a deposition was not attributable to Franke himself. *See Spohn Hosp.*, 104 S.W.3d at 882–83 (holding direct-relationship requirement unsatisfied where sanction was not visited on offender). However, the fault need not be attributable to the party himself in order for the direct-relationship requirement to be satisfied when the sanction is not directly visited on the party. Palau and the Center were unable to secure Dreyer's deposition for more than a year, notwithstanding several court orders requiring Dreyer to sit for one. The trial court's sanction—exclusion of Dreyer's testimony—was directly related to recalcitrant litigation conduct—Franke's counsel's inability or refusal to produce Dreyer for deposition. While Dreyer's exclusion undeniably

6

affected Franke, the trial court did not sanction Franke individually for discovery abuse.

Franke relies on *Thompson v. Woodruff*, 232 S.W.3d 316 (Tex. App.—Beaumont 2007, no pet.), for the proposition that his lone expert cannot be excluded absent evidence that he personally was responsible for the failure to produce Dreyer for deposition. In that medical malpractice suit, the defendants successfully moved to exclude the plaintiffs' expert after the plaintiffs' counsel—who experienced serious health problems and went bankrupt during the pendency of suit—repeatedly failed to produce the expert for deposition. *Id.* at 318–20. The court of appeals reversed the trial court's order excluding the expert and dismissing the plaintiffs' claims because the record did not show that the plaintiffs themselves "were personally responsible for the discovery abuse or even aware that their attorney had failed to produce the expert witness for deposition." *Id.* at 321–22.

*Thompson* is distinguishable. First, in that case, there essentially was no dispute that the failure to produce the expert for deposition was attributable to the plaintiffs' attorney. *See id.* at 321. The attorney admitted that she did not produce the expert for deposition because she lacked the funds to hire him and that she fabricated a scheduling conflict. *Id.* In contrast, the record in this case does not unambiguously show that counsel alone was to blame: Franke's counsel denies fault, contending that she did not callously disregard the discovery rules and that events

beyond her control are to blame. The dispute over Dreyer's deposition was protracted and the subject of several motions and orders before his exclusion. On this record the trial court could have reasonably inferred that Franke was aware of the situation and therefore bore some responsibility for the failure to produce Dreyer. *See TransAm.*, 811 S.W.2d at 917 (party bears some blame for lawyer's abuses when he is or should have been aware of his lawyer's conduct and discovery violations).

Second, in *Thompson*, the trial court excluded the expert "without first imposing lesser sanctions." 232 S.W.3d at 322. In this case, however, the trial court did impose lesser sanctions before excluding Dreyer. The trial court entered three separate orders requiring Dreyer to be deposed on or before a specified date. The parties agreed to the entry of the last two of these orders and approved both their form and substance. These two orders explicitly stated that failure to comply would result in Dreyer's exclusion. Orders like these, which compel discovery and threaten harsher sanctions for noncompliance, qualify as lesser sanctions. *See Cire*, 134 S.W.3d at 840 (relying on *TransAm.*, 811 S.W.2d at 918); *see also Weinberger v. Longer*, 222 S.W.3d 557, 571 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (rejecting argument that trial court didn't first impose lesser sanctions given that it twice ordered compliance with discovery requests); *Andras v. Mem'l Hosp. Sys.*, 888 S.W.2d 567, 572–73 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (order

8

compelling discovery that includes statement that noncompliance will result in dismissal is lesser sanction).

Were the law as Franke advocates, an expert whose testimony is essential to a litigant's case could never be stricken or excluded, no matter how prolonged the expert's refusal to cooperate in discovery, regardless of the egregiousness of counsel's disregard of the discovery rules, and heedless of the number of times that the trial court ordered the expert's deposition to go forward. In essence, Franke's position is that trial courts cannot exclude essential experts even if the party who retains them, or the party's counsel, never allows them to be deposed. Franke's position conflicts with the law, which requires a party seeking affirmative relief to make his retained experts available for deposition and allows for their exclusion if the party does not. TEX. R. CIV. P. 193.6(a), 195.3(a); *see Duerr v. Brown*, 262 S.W.3d 63, 75–76 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (affirming exclusion of expert who didn't appear for deposition even though it doomed legal malpractice claim).

### 2. Proportionality of excluding Dreyer's testimony

Franke contends that the trial court's exclusion of Dreyer's testimony was not proportionate to his repeated failure to produce his designated expert witness because the trial court failed to consider and impose lesser sanctions. Not so. The trial court initially denied Palau and the Center's motion to exclude Dreyer and

instead ordered the deposition to take place by September 8, 2017, warning that failure to comply could result in exclusion. An order like this one, compelling discovery on pain of a harsher sanction, is a lesser sanction. *See Cire*, 134 S.W.3d at 840; *Weinberger*, 222 S.W.3d at 571; *Andras*, 888 S.W.2d at 572–73. The trial court then entered two additional agreed orders requiring the deposition to go forward. The trial court did not exclude Dreyer until mid-February 2018, after he had failed to sit for a scheduled deposition multiple times, including occasions when Franke had expressly agreed to produce him. The trial court imposed a lesser sanction before excluding Dreyer, but the lesser sanction did not succeed in securing compliance with the discovery rules, notwithstanding that the trial court's final December 2017 order expressly stated that it would exclude Dreyer absent compliance. *See Weinberger*, 222 S.W.3d at 571 (noting that trial court's second discovery order warned that noncompliance would result in very sanction imposed). Nor has Franke suggested another sanction that would have succeeded in securing Dreyer's attendance.

Franke further contends that Dreyer's exclusion was excessive. Though he concedes that punishment and deterrence are legitimate purposes of sanctions, he argues that these ends do not justify trial by sanctions rather than on the merits. But sanctions serve an additional legitimate purpose—securing compliance with discovery. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992). Indeed,

10

securing compliance is the primary purpose of discovery sanctions. *In re Noble Drilling (Jim Thompson)*, 449 S.W.3d 625, 631 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). As we noted, the trial court first imposed lesser sanctions but these failed to secure compliance. When, as here, a litigant does not fulfill key discovery obligations in the face of lesser sanctions, the trial court may presume that his claims lack merit and dispose of them. *See Cire*, 134 S.W.3d at 839; *Weinberger*, 222 S.W.3d at 571; *Berry-Parks Rental Equip. Co. v. Sinsheimer*, 842 S.W.2d 754, 758–59 (Tex. App.—Houston [1st Dist.] 1992, no writ).

* * *

The discovery rules require that parties make their retained experts available for deposition. The trial court excluded Dreyer after he failed to appear for a deposition multiple times over the course of a year, during which time the trial court entered three orders requiring the deposition to proceed. The last of these orders, which was agreed to by the parties and approved by them as to form and substance, expressly warned that the trial court would exclude Dreyer for noncompliance. On this record, we conclude that the trial court did not abuse its discretion.

## II.     Motion For Leave to Designate a Substitute Expert

### A.     Standard of review and applicable law

We review a trial court's ruling denying leave to late-designate an expert for an abuse of discretion. *Ft. Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d

11

879, 881 (Tex. 2009) (per curiam); *Wigfall v. Tex. Dep't of Crim. Justice*, 137 S.W.3d 268, 272 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

A party's failure to timely designate witnesses results in their exclusion, unless he shows good cause for the late designation or that the failure to timely designate will not unfairly surprise or prejudice his opponents. TEX. R. CIV. P. 193.6(a); *see G.T. Leach Bldrs. v. Sapphire V.P.*, 458 S.W.3d 502, 514 (Tex. 2015) (noting that if party "had failed to timely designate experts, it would have forfeited the right to present expert witnesses if the suits went to trial"). The party seeking to late-designate a witness bears the burden of showing good cause or the lack of unfair surprise or prejudice. TEX. R. CIV. P. 193.6(b); *Ft. Brown*, 285 S.W.3d at 881.

A party who relies on the good-cause exception must make a strict showing. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 915 (Tex. 1992) (interpreting materially similar predecessor to Rule 193.6). Good cause exists when circumstances make timely disclosure or designation difficult or impossible. *Id.*; *Harris Cty. v. Inter Nos, Ltd.*, 199 S.W.3d 363, 367 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Inadvertence of counsel, lack of surprise, and the uniqueness or importance of the evidence at issue will not support a finding of good cause. *Alvarado*, 830 S.W.2d at 915; *Inter Nos*, 199 S.W.3d at 367.

As to unfair surprise and prejudice, the inquiry focuses on whether the particular evidence will cause unfair surprise or prejudice, not whether the general

12

issue or subject matter to which the evidence relates will unfairly surprise or prejudice the other parties. *PopCap Games v. MumboJumbo*, 350 S.W.3d 699, 718 (Tex. App.—Dallas 2011, pet. denied); *Lopez v. La Madeleine of Tex.*, 200 S.W.3d 854, 862–63 (Tex. App.—Dallas 2006, no pet.). That a party requires expert testimony to support its cause of action does not establish that its opponents will not be unfairly surprised by the untimely designation of an expert. *PopCap*, 350 S.W.3d at 718; *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 272 (Tex. App.—Austin 2002, pet. denied). Nor does offering one's opponents an opportunity to depose an untimely designated expert establish that they will not be unfairly surprised or prejudiced. *PopCap*, 350 S.W.3d at 718; *Ersek*, 69 S.W.3d at 272.

The trial court's discretion extends to deciding whether the party has carried its burden to show good cause or lack of unfair surprise or prejudice. *Syrian Am. Oil Corp. v. Pecten Orient Co.*, 524 S.W.3d 350, 366 (Tex. App.—Houston [1st Dist.] 2017, no pet.). But the trial court's ruling must be supported by the record. *Dyer v. Cotton*, 333 S.W.3d 703, 717 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

### B.     Analysis

#### 1.     Good cause

Franke contends that good cause existed to late-designate an expert because events beyond his control prevented Dreyer's deposition, including Hurricane Harvey, the sudden injury or illness of one of his lawyer's family members, and a

13

flu epidemic that prevented Dreyer from traveling to Houston. Given the record, we discern no abuse of discretion by the trial court in failing to find good cause.

If the trial court had excluded Dreyer in the immediate aftermath of Hurricane Harvey, Franke would have a point. But Dreyer repeatedly failed to attend depositions noticed in the months preceding the hurricane and on several dates well after the hurricane. Moreover, on all but the last of these dates, in January 2018, Dreyer's deposition was slated to take place in New York or California, not Texas.

Franke asserts that Dreyer's deposition was twice cancelled because his lawyer's stepmother became ill in October 2016 and passed away in November 2016. Accepting these representations as true, these events occurred in late 2016, many months before the trial court entered its three orders concerning Dreyer's deposition. The illness and death of counsel's stepmother in 2016 does not excuse the failure to produce Dreyer for deposition in 2017 and early 2018.

Franke asserts that Dreyer could not travel to Houston for his deposition in January 2018 because there was a flu epidemic and this "required his presence to treat his many patients." The record contains no evidence, such as an affidavit by Dreyer, to support this assertion. The trial court did not error in failing to credit an unsupported assertion made after more than a year of delay.

We conclude that the trial court could have reasonably found that the circumstances relied on by Franke, considered singly or together, did not amount to

the strict showing of difficulty or impossibility necessary to establish good cause. We thus hold that the trial court did not abuse its discretion in finding that Franke did not show good cause to untimely designate a substitute expert.

## 2. Unfair surprise or prejudice

Franke contends that his untimely designation of another expert would not unfairly surprise or prejudice Palau and the Center because the issues in the case would remain the same and the substitute expert "would express the same opinions" as Dreyer. Franke further contends that they would not be unfairly surprised or prejudiced because he would designate an expert who was local and could be deposed without the need for travel.

The trial court did not err in failing to find a lack of unfair surprise or prejudice on the grounds relied on by Franke because these grounds are not legally sufficient to establish lack of unfair surprise or prejudice. It is immaterial that the issues would remain the same; an inquiry into unfair surprise or prejudice turns on the particular evidence, not whether the evidence pertains to the same issues. *E.g.*, *PopCap*, 350 S.W.3d at 718. The trial court could not, however, assess the impact of any particular evidence in this instance because Franke did not identify a proposed substitute expert or provide specifics as to this unidentified expert's anticipated testimony. While Franke asserts that his new expert would have offered the same opinions as Dreyer, this claim is unsubstantiated. The trial court was not obligated to presume that

15

Franke would locate another expert who would agree to offer the same opinions as Dreyer or that the new expert would do so on the same bases as Dreyer. Franke's assertion that this unidentified expert could be deposed with ease likewise cannot support a finding of lack of unfair surprise or prejudice because the ability to depose a new expert does not preclude unfair surprise or prejudice. *See id.*

Franke also asserts that Palau and the Center would not be unfairly surprised or prejudiced because the trial court could have continued trial to allow further discovery. Franke does not explain how a continuance would alleviate any unfair surprise or prejudice and the record belies his position. This case was scheduled for trial on the April 16, 2018 two-week docket. Franke did not move to late-designate another expert until almost a month beforehand and 20 days after Palau and the Center moved for no-evidence summary judgment. By then, Franke's suit had been pending for almost three and a half years. At bottom, Franke's position that a continuance to conduct further discovery would prevent unfair surprise or prejudice merely restates his position that the ability to depose his unidentified substitute expert would do so.

Nor is it self-evident that the trial court would have granted a continuance had Franke sought one. A trial court cannot grant a continuance "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. When, as here, want of testimony is the basis for a continuance,

16

the affidavit must show that the party seeking the continuance "has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known." TEX. R. CIV. P. 252. The explanations that Franke has offered—Hurricane Harvey and its aftermath, the injury or illness of a member of counsel's family, and a flu epidemic—seek to explain his inability to provide an expert for deposition but do not substantiate that he was diligent in trying to do so.

We conclude that the trial court could have reasonably found that, just as Franke did not show good cause, he did not show a lack of unfair surprise or prejudice. We therefore hold that the trial court did not abuse its discretion in denying Franke leave to untimely designate another expert in Dreyer's stead.

## CONCLUSION

We affirm the judgment of the trial court.


Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.