**Opinion filed November 14, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00159-CV
_____

## IN THE INTEREST OF K.L.E.C., A CHILD

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No. B-3145-PC**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of K.L.E.C.'s[1] mother and father. The father filed a notice of appeal. We affirm.

K.L.E.C.'s father presents eleven issues for review. In the first two issues, he argues that the trial court abused its discretion when it denied the father's motion to extend the dismissal date and for continuance of final hearing. In the third issue, he complains of the trial court's failure to enforce its pretrial scheduling order regarding the disclosure of witnesses. In the remainder of his issues, the

---

[1]It is noted that the notice of appeal reflects the child's name as K.E.C., a child.

father challenges the legal and factual sufficiency of the evidence to support the termination of his parental rights.

The father argues in his first and second issues on appeal that the trial court should have granted the father's motion to extend the dismissal date and for continuance of the final hearing based upon the extraordinary circumstances of this case and also based upon the impending resolution of his criminal charges. *See* TEX. FAM. CODE ANN. § 263.401 (West 2008), § 161.2011(a) (West Supp. 2013) (respectively). The father filed the motion on January 2, 2013. The reasons asserted in the motion were that the father was in jail, where he had been the entire time this case was pending, but that he expected the criminal charges against him to be disposed of soon; that DNA testing had not been completed; and that he wanted the Department of Family and Protective Services to investigate a possible placement for K.L.E.C. that he suggested. On the date originally set for final hearing, January 18, 2013, the trial court considered the father's motion. The father offered no evidence or testimony in support of the motion. The court ultimately denied the extension but postponed the final hearing until February 5, 2013, to allow time for the DNA test results to be obtained, although the father had previously acknowledged in court that he was K.L.E.C.'s father.

Pursuant to Section 263.401, a trial court is required to dismiss a suit brought by the Department if trial has not commenced by the mandatory dismissal date—here, February 11, 2013—unless an extension has been granted under Section 263.401(b). A trial court may extend the dismissal date and retain the suit on its docket for up to 180 days beyond the original dismissal date if the trial court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the Department and that continuing such conservatorship is in the best interest of the child. *Id.* § 263.401(b). A trial court has discretion to grant an extension, but the language in Section 263.401 "prefers

finality to suit." *In re A.J.M.*, 375 S.W.3d 599, 605 (Tex. App.—Fort Worth 2102, pet. denied).

Section 161.2011(a) authorizes a trial court, in its discretion, to grant a motion for continuance filed by a parent "against whom criminal charges are filed that directly relate to the grounds for which termination is sought." The case may be continued "until the criminal charges are resolved," but the trial court nevertheless "shall comply with the dismissal date under Section 263.401." FAM. § 161.2011(a). The father's reliance on Section 161.2011(a) is misplaced because a trial court, "[n]otwithstanding any continuance granted," must comply with Section 263.401's dismissal guidelines and also because the record in this case does not reveal that the criminal charges filed against the father directly related to the grounds upon which termination was sought. *Id.* We hold that the trial court did not abuse its discretion in denying the father's request to extend the dismissal date pursuant to either section of the Family Code relied upon by the father.

Furthermore, the trial court did not abuse its discretion when it refused to grant any further continuance. The father's motion, though written and verified, was not supported by an affidavit showing sufficient cause as required by TEX. R. CIV. P. 251. Because the father failed to comply with Rule 251, we presume that the trial court did not abuse its discretion when it denied the request for continuance. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). The father's first and second issues are overruled.

In his third issue, the father argues that the trial court abused its discretion when it allowed the Department's undisclosed witnesses to testify at the final hearing. The father asserts that the Department failed to disclose its witnesses prior to trial in accordance with the trial court's pretrial scheduling order. *See*

TEX. R. CIV. P. 166.[2]  The record shows that, prior to the presentation of any evidence at the final hearing and prior to the testimony of each of the Department's three witnesses, the father objected to the testimony based upon the Department's violation of the pretrial scheduling order.  The trial court overruled the father's objections and permitted the testimony of the Department's witnesses: the father; the Department's conservatorship caseworker, Wendy Duran; and the Department's investigator, Barbie Cuevas.

A trial court's decision to sanction a party for failing to comply with pretrial orders will not be overturned on appeal absent an abuse of discretion.  *Taylor v. Taylor*, 254 S.W.3d 527, 532–35 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Perez v. Murff*, 972 S.W.2d 78, 81 (Tex. App.—Texarkana 1998, pet. denied).  The three witnesses called by the Department were either parties or party representatives, and the father was not surprised by any of these witnesses.  We cannot hold that the trial court abused its discretion when it failed to sanction the Department under these circumstances.  The third issue is overruled.

In the remainder of his issues, the father argues that the evidence is legally and factually insufficient to support the termination of his parental rights.  The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013).  To determine whether the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).  To determine whether the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction

---

[2]We note that the father does not rely on TEX. R. CIV. P. 193.6 for its contention that the witnesses should have been excluded.  Rule 193.6 addresses the exclusion of testimony from a witness other than a named party as a sanction for the failure to timely respond to the opposing party's discovery.

about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

In this case, the trial court found that the father had committed three of the acts listed in Section 161.001(1): that he knowingly placed or allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child as set out in Section 161.001(1)(D); that he engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child as set out in Section 161.001(1)(E); and that he constructively abandoned the child as set out in Section 161.001(1)(N). The trial court also found that termination of the father's rights was in the best interest K.L.E.C. *See id.* § 161.001(2).

The record shows that the Department removed K.L.E.C. on February 10, 2012, when she was two months old. The reason for the removal was the mother's use of methamphetamine around the child. Prior to K.L.E.C.'s birth, the mother's older children were removed by the Department due to the mother's drug use. The father was in a relationship with the mother at the time of the prior case but was not the father of those children.

At the time of K.L.E.C.'s removal, the father was in jail; he had been arrested on January 10, 2012, when K.L.E.C. was one month old. He remained in jail at the time of the final hearing. The father invoked his Fifth Amendment privilege against self-incrimination and refused to answer questions regarding the events of January 10, 2012. However, other evidence indicated that domestic violence occurred between the mother and father. According to the Department's investigator, one such incident involved the brandishing of a gun. The father had

5

been convicted of the felony of robbery in 1994 and was on parole at the time of the January 2012 incident. The father testified that he had eleven years left on his parole, that he was currently charged with evading arrest or detention and with unlawful possession of a firearm by a felon, and that "a blue warrant" remained pending for a parole violation stemming from the other criminal charges.

The father testified that he sent fifteen to twenty letters to the Department inquiring about K.L.E.C. but received no response. Around October 2012, the father requested that K.L.E.C. be placed with a family friend, Rayetta Trigg, until the father's release. The Department did not place K.L.E.C. with Trigg. K.L.E.C. had been living in the same foster home since February 2012, and she had bonded with her foster family. K.L.E.C. appeared to be happy and was safe in that environment.

The Department's caseworker testified that it is in K.L.E.C.'s best interest to remain with her foster mother, with whom K.L.E.C. has lived since being removed. K.L.E.C. has bonded to her foster family, which is the only family she knows, and she has done well in that placement. K.L.E.C. appears to be happy. The foster mother is able to provide K.L.E.C. with a safe, loving, and stable home and is also able to meet K.L.E.C.'s medical needs. The caseworker recommended that the parental rights of the mother and the father be terminated and that the foster mother be allowed to adopt K.L.E.C. The foster mother testified that, if the mother's and father's rights were terminated, she would like to adopt K.L.E.C.

With respect to the father's invocation of his Fifth Amendment rights in response to numerous questions, we note that a trier of fact in a civil case is free to draw negative inferences from a witness's repeated invocations of the Fifth Amendment. *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007); *see* TEX. R. EVID. 513(c). In this case, the father invoked his Fifth Amendment privilege when asked numerous questions about the events that occurred on January 10, 2012, for

which the father was arrested, including whether he had a revolver in his possession on that date; whether he got into an argument with the mother on that date; and whether, as the mother "was walking away from the window holding [K.L.E.C.]," the father brandished a pistol and fired one shot into the residence toward the mother and K.L.E.C. The father later admitted that he had some involvement in an altercation at the trailer house in the presence of the mother, K.L.E.C., and a male on that date. The father testified that nobody would open the door, so he "hit the glass and told [the male], open the door, get your stuff and get out of my house. [The male] had a little stick or baseball bat [and] broke the glass in [the father's] face." The father also admitted that he fled from the scene.

We hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(E). There was clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the father engaged in conduct or knowingly placed K.L.E.C. with persons who engaged in conduct that endangered the physical or emotional well-being of the child. There was evidence of the mother's drug use in the child's presence, evidence that the father left K.L.E.C. in the care of the mother even though the mother's other children had been removed due to her drug use, evidence of the January 2012 disturbance involving the father in the child's presence, and evidence of domestic violence between the parents. Such acts constituted conduct that endangered K.L.E.C. To support termination under Section 161.001(1)(E), the offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Domestic violence may constitute evidence of endangerment. *Id.*; *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). The father's sixth and seventh issues are overruled.

Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the father's fourth, fifth, eighth, and ninth issues in which the father challenges the sufficiency of the evidence to support the trial court's other findings under Section 161.001(1). *See* TEX. R. APP. P. 47.1.

In the father's tenth and eleventh issues, he argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in K.L.E.C.'s best interest. With respect to the best interest of a child, no unique set of factors need be proved. *C.J.O.*, 325 S.W.3d at 266. But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record shows that the father was facing an eleven-year sentence for violating his parole, that other criminal charges were pending against the father, that the father spent fifteen years in prison prior to fathering K.L.E.C., that domestic violence occurred in his relationship with K.L.E.C.'s mother, that K.L.E.C.'s mother had other children taken away by the Department due to the

8

mother's drug use while she was in a relationship with the father, and that the father had been in jail since K.L.E.C. was one month old. K.L.E.C. has a loving, stable placement with her foster family, with whom K.L.E.C. has bonded. The foster mother wants to adopt K.L.E.C.

Based on the evidence presented at trial and in light of the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in the best interest of K.L.E.C. We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. The evidence is both legally and factually sufficient to support the finding that termination of the father's parental rights is in the best interest of K.L.E.C. The father's tenth and eleventh issues are overruled.

We affirm the trial court's order of termination.


JIM R. WRIGHT

CHIEF JUSTICE


November 14, 2013

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

9