# NO. 12-22-00025-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *FERRELL GAS, INC., FERRELL GAS, L.P., AND MICHAEL SMALLING, APPELLANT* | § | *APPEAL FROM THE 7TH* |
| | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *MARVEL REESE, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellants Ferrell Gas, Inc., Ferrellgas L.P. and Michael Smalling appeal the trial court's order excluding their expert witness. In a single issue, Appellants urge the trial court abused its discretion and that the exclusion of their expert amounts to an impermissible death penalty sanction. We affirm.

## BACKGROUND

On June 1, 2018, Marvel Reese was a passenger in a charter bus traveling on Interstate 20 in Smith County, Texas. Smalling was operating a propane truck owned by his employer Ferrellgas when he collided with the bus.

Reese filed suit against Appellants. She alleged Smalling was negligent and grossly negligent in his operation of the truck. She further alleged Ferrellgas was negligent via respondeat superior, directly negligent in its hiring, training, entrustment, supervision, retention, and monitoring of Smalling, and grossly negligent.

At trial, Smalling admitted the accident was his fault. He acknowledged failing to keep a proper lookout and maintain an appropriate following distance. Appellants offered to stipulate liability based on Smalling's admissions. Reese rejected the stipulation and claimed the accident was also caused by Ferrellgas's negligent hiring, retention, supervision, and training. As a result,

Reese pursued independent negligent findings against Smalling and Ferrellgas, in addition to findings on gross negligence and exemplary damages.

During discovery, Ferrellgas could not locate and did not produce Smalling's pre-hire background investigation, which is required by federal motor carrier regulations. Reese relied on the missing background investigation for her negligent hiring claim during her case in chief. On the final day of a five-day trial, Ferrellgas called its liability expert, David Hedgpath to testify. At the beginning of his testimony, Hedgpath was asked, "Will you base any of your opinions on the fact that if you haven't seen something, that it doesn't exist?" Hedgpath responded in the negative. On direct examination, Hedgpath testified that Ferrellgas met the regulatory requirements in hiring Smalling and that his file contained all of the information required. During cross-examination, Reese specifically asked Hedgpath if Ferrellgas complied with the background investigation requirement. Hedgpath responded that he reviewed a document from a third-party administrator that performed a background investigation of Smalling. Hedgpath then provided a copy of the investigation to Reese. Reese informed the trial court at a bench conference that Ferrellgas had not produced the investigation in discovery. She also reminded the trial court that Ferrellgas's corporate representative, Douglas Null, testified that Smalling's file did not contain the investigation. Appellants' counsel, Darrell Minton, claimed he did not know where Hedgpath got the document and that he did not provide it to Hedgpath.

Reese moved to strike Hedgpath's testimony, urging that the untimely production of the investigation was extremely prejudicial to her case. According to Minton, Null "somehow acquired" the document following his testimony "and provided it directly to Mr. Hedgpath." When pressed by the trial court, Minton stated, "I had a strong belief that it did exist" prior to calling Hedgpath as a witness. He stated that he had not "seen it, read it . . . I had a good-faith belief it existed, but not that it had been given to Mr. Hedgpath." He further admitted never producing the document to Reese or informing her of its existence. Appellants argued that no sanctions were necessary because the document could not be admitted into evidence. They urged the document would have helped Ferrellgas's defense, so they were prejudiced instead of Reese. The trial court informed Appellants of the proper remedy when evidence is found during a trial:

immediately go to your opposing counsel and you tell them, "We think we found this. What do you want to do about it?" Not keep it secret. Not keep it with only you knowing, and leave them to see if they find out about it by happenstance. That's just not fair.

The trial court granted Reese's motion to strike Hedgpath's testimony and instructed the jury it was not to consider any of Hedgpath's testimony.

The jury subsequently found both Smalling and Ferrellgas negligent and apportioned them each fifty percent responsibility. It awarded Reese a total of $800,000 in damages, significantly less than the $1.25 million she sought. The jury found no gross negligence by Smalling or Ferrellgas.

Reese filed a post-verdict motion for sanctions based on Minton's dishonesty about Hedgpath's receipt of the investigation. Appellants urged no sanctions were necessary. They submitted an affidavit in which Minton admitted that he learned "on the evening of September 1, 2021 . . . that we had received a document that may have been a background check on Michael Smalling." He further claimed that he neither read the document nor provided it to Hedgpath. At the hearing, Minton represented to the court:

> I got an email. There was an attachment. I had a good faith belief, but I knew I had too many things to do in this trial to bother reading a background check that I knew could not be admissible. I didn't bother to read it. There was no motivation for me to read it. I chose to let the Plaintiffs have an unfair advantage, an advantage that they weren't entitled to have except for the fact that my client hadn't located a document until, what, day three of the trial.

Ferrellgas's Director of Risk Management affirmed via affidavit that she found the document and provided it to Mr. Null and counsel on September 1, the third day of trial. At the hearing, Reese introduced a deposition excerpt from Hedgpath in another case. In that deposition, Hedgpath was questioned about being struck at trial in the Ferrellgas case. Hedgpath testified that he received the document from the defense team at a dinner two days before he testified at trial. Prior to granting the motion for sanctions, the trial court stated:

> . . . it was intentionally not provided to them. You've effectively told me you intentionally did not look at something that was sent to you with an attachment about the case that you're middle of the stinking trial on. I don't see how a lawyer does that.

The trial court memorialized its trial order but granted no additional sanctions. This appeal followed.

In their sole issue, Appellants urge the trial court abused its discretion when it excluded their expert's testimony. Specifically, they urge the exclusion was an impermissible death penalty sanction and prevented a decision on the merits of the case.

**Standard of Review and Applicable Law**

A party who fails to make a timely discovery response may not introduce in evidence the material that was not timely disclosed, unless it makes a showing of good cause and lack of unfair surprise or prejudice to the opposing party. TEX. R. CIV. P. 193.6(a), (b). However, trial courts also have the discretionary power to impose other sanctions. *See* TEX. R. CIV. P. 215.2, 215.3. A discretionary sanction imposed under Rules 215.2 and 215.3 must be just. *See id*. 215.2, 215.3; *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). Whether a sanction is just is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanctions imposed. *Powell*, 811 S.W.2d at 917. Second, just sanctions must not be excessive. *Id*. The punishment should fit the crime. *Id*. "A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes." *Id*. Courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *Id*.

Sanctions that have the effect of adjudicating a claim or precluding a decision on the merits of the case are referred to as "death penalty" sanctions. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 732 (Tex. 1993). "Death penalty" sanctions are harsh and may be imposed as an initial sanction only in the most egregious and exceptional cases. *Cire v. Cummings*, 134 S.W.3d 835, 842 (Tex. 2004). Death penalty sanctions may be imposed in the first instance only "when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules." *Tanner*, 856 S.W.2d at 725. Before imposing a death-penalty sanction, a trial court must consider whether lesser sanctions would fully promote compliance. *Cire*, 134 S.W.3d at 839–40. "Under this standard, the trial court need not test the effectiveness of each available lesser sanction by actually imposing the lesser sanction on the party before issuing the death penalty; rather, the trial court must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed." *Id*. at 840 (citing *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883 (Tex. 2003) (noting that the record should

"contain some explanation of the appropriateness of the sanctions imposed")). This standard does not require a trial court to list each possible lesser sanction in its order and then explain why each would be ineffective. *Id*. at 842.

"The absence of an explanation of how a trial court determined to impose an especially severe sanction is inadequate." *Citibank, N.A. v. Estes*, 385 S.W.3d 671, 676 (Tex. App.–Houston [14th Dist.] 2012, no pet.). A trial court must "explain that it considered lesser sanctions before imposing death penalty sanctions." *Id*. Even when the record reflects intentional discovery abuse, the trial court must still explain that it considered lesser sanctions before imposing sanctions that preclude a party's ability to present the merits of its claims. *Primo v. Rothenberg*, No. 14–13–00794–CV, 2015 WL 3799763, at *24 (Tex. App.–Houston [14th Dist.] June 18, 2015, pet. denied) (mem. op.). "Thus, a trial court either must impose lesser sanctions first or must clearly explain on the record why the case is an exceptional case where it is fully apparent that no lesser sanctions could promote compliance." *Knoderer v. State Farm Lloyds*, No. 06–13–00027–CV, 2014 WL 4699136, at *11 (Tex. App.–Texarkana Sept. 19, 2014, no pet.) (mem. op.).

Moreover, a conclusory explanation is insufficient. *See Tanner*, 856 S.W.2d at 729 (giving no deference to unsupported conclusions in the trial court's order, which stated without explanation that lesser sanctions would have been ineffective); *Associated Air Ctr. LP v. Tary Network Ltd.*, No. 05–13–00685–CV, 2015 WL 970664, at *6 (Tex. App.–Dallas Mar. 4, 2015, no pet.) (mem. op.) ("[T]he sanctions order simply recites, without any further explanation or analysis, that lesser sanctions were considered but 'would not promote compliance with the Texas Rules of Civil Procedure.' Beyond this general statement and description of the offensive conduct, the trial court in this case offered no reasoned explanation of the appropriateness of the sanctions imposed.").

Although death-penalty sanctions most often are thought of in the context of striking pleadings or rendering a default judgment, any sanctions that are case determinative may constitute death-penalty sanctions, including those that exclude essential evidence. *In re RH White Oak, LLC*, 442 S.W.3d 492, 501 (Tex. App.–Houston [14th Dist.] 2014, orig. proceeding) (emphasis added). For example, in *In re Alere Women's & Children's Health, LLC*, 357 S.W.3d 809 (Tex. App.–Houston [14th Dist.] 2011, orig. proceeding), a nursing-malpractice action, the trial court struck eight expert witnesses because the relator violated Section 74.351(k)

of the Civil Practices and Remedies Code by disclosing to these experts a preliminary expert report filed by the plaintiff. *Alere Women's & Children's Health, LLC*, 357 S.W.3d at 814-15. The appellate court concluded that the trial court's striking these expert witnesses amounted to a death-penalty sanction because all of the experts that relator designated for the purpose of testifying about negligence and causation had been stricken. *Id*. at n.1. The appellate court held that the trial court abused its discretion by not considering lesser sanctions, stating:

> Our review of the record from the December 12, 2011, hearing in this case reveals the court did not consider lesser sanctions before imposing death penalty sanctions. The record does not contain any explanation of the appropriateness of the sanctions imposed. …. Even if we accepted the real party's contention that relator should not have permitted its experts to review the preliminary expert report, the trial court should have considered lesser sanctions to accomplish the same goal of prohibiting any reference to the preliminary report.

*Id*. at 813 (internal citations omitted). The decisions of other courts of appeals likewise have recognized that the striking of a party's witnesses may constitute a death-penalty sanction.[1]

**Analysis**

Ferrellgas contends that the striking of its sole liability expert amounted to a death penalty sanction. It further urges that the sanction was excessive under the circumstances and precluded it from presenting its defense.[2] However, while Ferrellgas clearly committed sanctionable conduct, even assuming the sanction is excessive, we conclude that it did not result in the rendition of an improper judgment.

Texas courts have repeatedly held that, where only simple negligence is alleged, negligent entrustment and respondeat superior are mutually exclusive modes of recovery. *See Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 654 (Tex. App.—Dallas 2002, pet. denied); *Patterson v. E. Tex. Motor Freight Lines*, 349 S.W.2d 634, 636 (Tex. Civ. App.— Beaumont 1961, writ ref'd n.r.e.) ("The theory of negligent entrustment . . . became immaterial as soon as the stipulation as to the course of employment was made."). The courts have reasoned that negligent entrustment and respondeat superior are both means to the same end—making an

---

[1] *See Revco, D.S., Inc. v. Cooper*, 873 S.W.2d 391, 396 (Tex. App.–El Paso 1994, orig. proceeding) (exclusion of experts in medical-malpractice case requiring expert testimony has a "death penalty" effect); *Perez v. Murff*, 972 S.W.2d 78, 82 (Tex. App.–Texarkana 1998, pet. denied) (exclusion of appellants' undesignated witnesses precluded them from presenting their case, and thus, constituted a "death penalty" sanction).

[2] While we do not reach the appropriateness of the severity of the sanction, we note that if Appellants had brought the background investigation to the trial court's attention when they discovered it, a lesser sanction may have been imposed.

employer liable for the negligence of an employee. *See Rosell*, 89 S.W.3d at 657. But once respondeat superior is established, the competence of the employee and the care exercised in his employment become immaterial. *See Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.). The employer is liable regardless of whether the employee is fit and competent. *See id.*

On the other hand, where the plaintiff alleged simple negligence against the employee and gross negligence against the employer for entrusting a vehicle to an incompetent or reckless driver, "the negligent entrustment cause of action would be an independent and separate ground of recovery against the owner for exemplary damages." *See Rosell*, 89 S.W.3d at 654. The employer cannot avoid direct liability for exemplary damages by admitting vicarious liability for compensatory damages. *See Williams v. McCollister*, 671 F. Supp. 2d 884, 889 (S.D. Tex. 2009); *McDorman ex rel. Connelly v. Texas-Cola Leasing Co.*, 288 F. Supp. 2d 796, 810 (N.D. Tex. 2003). Therefore, once respondeat superior is established, a negligent entrustment claim is only material (and viable) to the extent it can be used to recover exemplary damages from the employer. *Main v. Eichorn*, No. W-10-CA-00158, 2011 WL 13127650, at *7–8 (W.D. Tex. Mar. 3, 2011).

In this instance, the jury did not find Ferrellgas liable for gross negligence. Pragmatically, whether it be for Smalling's negligence through respondeat superior, or for its own direct negligence, Ferrellgas is responsible for the entirety of the simple negligence judgment. This is especially true because Smalling admitted fault and Ferrellgas attempted to stipulate liability based on his testimony. It was undisputed at trial that Smalling was acting in the course and scope of his employment at the time of the accident. Furthermore, Appellants' counsel conceded at oral argument that Ferrellgas is financially responsible for the entirety of the judgment. Appellants did not contend Reese was proportionately responsible for the accident. It matters not whether the jury split the negligence between Smalling and Ferrellgas 50/50, 25/75, or 100/0. Because the jury did not find gross negligence, the practical effect remains the same and the direct negligence claims against Ferrellgas are immaterial. Therefore, even if the striking of Ferrellgas's lone liability expert was excessive, it did not result in an improper judgment. *See* TEX. R. APP. P. 44.1(a).

And we are not persuaded otherwise by Appellants' arguments to the contrary. Appellants urge that Ferrellgas's direct negligence is not immaterial because Reese pursued

7

direct negligence at trial. But as previously discussed, Reese pursued direct negligence as an avenue toward gross negligence. However, by rejecting the gross negligence theory against both Smalling and Ferrellgas, the jury rendered Ferrellgas's direct negligence immaterial.

Appellants also urge that they would not have been harmed had the trial court ordered a lesser sanction. They suggest the trial court could have instructed the jury to disregard Hedgpath's testimony that he saw the report of the background investigation. They further posit that the trial court could have simply adjudicated the fact that the background investigation had not been performed. According to Appellants, doing so would not establish Ferrellgas's negligence because the jury would still need to find the lack of an investigation caused the accident. However, Hedgpath did not testify regarding causation. He testified regarding Ferrellgas's employment and training practices. Hedgpath's testimony focused on his opinions that Ferrellgas complied with the federal motor carrier regulations and adequately trained, supervised, retained, and hired Smalling. He did not specifically testify whether Ferrellgas's actions caused the accident with Reese. Therefore, even if the entirety of Hedgpath's testimony had not been struck, but the court instead instructed the jury that no background investigation had been performed as suggested by Appellants on appeal, it would not have changed the jury's verdict. At best, the inclusion of his testimony may have impacted the percentages of liability; however, as discussed above, the percentages are irrelevant to financial responsibility.

Appellants further urge that the imposition of sanctions unfairly harmed Ferrellgas's, Minton's and Hedgpath's reputations. We disagree. Either someone associated with Ferrellgas or one of its attorneys, including Minton, provided the investigation to Hedgpath. Minton knew the investigation had been found and failed to disclose it to Reese.[3] The conduct at issue was clearly sanctionable; it was Ferrellgas's, Minton's and Hedgpath's own actions that damaged their reputation, not the sanctions. *See **Haase v. Pearl River Polymers, Inc.**, No. 14-11-00024-CV, 2012 WL 4166826, at \*6 (Tex. App.—Houston [14th Dist.] Aug. 9, 2012, pet. denied) (mem. op.).

For the above reasons, we conclude that any alleged error in excluding Hedgpath's testimony is harmless. Thus, we overrule Appellants' only issue.

---

[3] We further note that there is at least circumstantial evidence in the record that Minton knew Hedgpath had seen the background investigation and set up an avenue for Hedgpath to convey that information conveyed to the jury through testimony because Minton knew the document could not be offered into evidence.

## DISPOSITION

Having overruled Appellants' sole issue, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered December 21, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

DECEMBER 21, 2022

NO. 12-22-00025-CV

FERRELL GAS, INC., FERRELL GAS, L.P.,
AND MICHAEL SMALLING,
Appellants
V.
MARVEL REESE,
Appellee

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 18-1652-A)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are adjudged against Appellants, **FERRELL GAS, INC., FERRELL GAS, L.P., AND MICHAEL SMALLING** and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*